UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE SKYWAY GROUP, INC.

    Plaintiff,

    v.

GE HONDA AERO ENGINES LLC,

    Defendant.

Case No. 1:21-cv-51
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on Defendant General Electric Honda Aero Engines LLC's ("GHAE") Motion for Judgment on the Pleadings (Doc. 16). For the reasons set forth below, the Court **GRANTS** GHAE's Motion and **DISMISSES WITH PREJUDICE** The Skyway Group's ("Skyway") claims against GHAE.

### BACKGROUND[1]

For purposes of the instant Motion, the Court accepts as true the factual allegations in the Complaint (Doc. 1). Thus, the Court reports those allegations here, but with the disclaimer that these facts are not yet established, and may never be.

In 2017, Honda R&D Americas LLC ("HRA"), of which GHAE is an affiliate, approached Skyway about a project to re-engine an aircraft called the Citation CJ. (Compl., Doc. 1, ¶ 8, #2). This venture was known as the CitationJet Program. (*Id.* at

---

[1] The Court has already summarized the factual background of this case in the Court's previous Order (Doc. 19) granting GHAE's Motion for Possession of Property (Doc. 7). The Court reproduces and expands on some of that recounting here.

¶ 11, #3). During negotiations for that program, the parties agreed that GHAE would supply engines that would be repurposed for the CitationJet aircraft. (*Id.* at ¶ 12, #3).

As the Court understands it, "re-engining" refers to the process of certifying a new engine for installation on an existing aircraft model. Not surprisingly, the process entails significant testing both (1) to determine how to affix the engine to a given airframe, and (2) to establish that the new engine performs in a safe and effective manner on that airframe. Of course, once a new engine is certified for use on an existing type of airframe, there is also the work of actually installing the engine on each specific aircraft of that type that is to be modified.

GHAE is a joint venture, owned by Honda Aero and General Electric, that designs and builds jet engines. (Compl., Doc. 1, ¶ 12, #3). Skyway is a company that obtains permission from the Federal Aviation Administration ("FAA") to change the engines in private jets. (*Id.* at ¶ 1, #1). Under the CitationJet Program, the parties contemplated that Skyway would assist in undertaking the work necessary to show that GHAE jet engines could safely be installed on Citation CJ aircraft. (*Id.*). Assuming that the FAA approved the modification, Skyway would then be the approved vendor to install GHAE jet engines on existing Citation CJ jets. (*See id.* at ¶ 1, #1).

Skyway, though, apparently had cashflow concerns relating to the upfront costs associated with its proposed participation in the CitationJet Program. Accordingly, HRA and Skyway discussed the possibility that GHAE (the engine supplier) could also provide financing to Skyway. (*Id.* at ¶ 12, #3). To that end, on

February 13, 2019, HRA, GHAE, and Skyway executed a Memorandum of Understanding ("MOU") that outlined the preliminary terms among those parties regarding the CitationJet Program. (*Id.*). The MOU characterizes its terms as the parties' "preliminary understandings" and expressly states that "[n]either Party … will be obligated to proceed with the Transactions contemplated herein unless and until the execution and delivery of the Agreements" toward which the parties would continue to negotiate. (MOU, Answer Ex. A, Doc. 6-1, #46).[2] The MOU further provides that "the parties do not intend this MOU … to be a binding contract" and that "no Party may attempt to enforce any other Section or rights or obligations of this MOU against any other Party …." (*Id.*). Instead, the MOU states that "[t]he Parties intend to continue negotiations with the mutual goals of further defining the scope of … the Transactions … and ultimately entering into definitive agreements, negotiated in good faith and in a timely manner …." (*Id.* at #45).

Nevertheless, according to Skyway, GHAE also made various other oral and written promises to fund Skyway's activities in connection with the CitationJet Program in the course of meetings held both before and after the MOU. (Compl., Doc. 1, ¶ 13, 15, 16, #3–4).

As part of the CitationJet Program, HRA wanted to purchase a Citation aircraft that had been modified to include the GHAE engines—a sort of proof-of-concept. To that end, HRA and Skyway executed an Aircraft Purchase Agreement

---

[2] The Court may and does consider the MOU at the pleadings stage because it is "referred to in the plaintiff's complaint and [is] central to the plaintiff's claim." *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013) (internal quotation marks and alterations omitted); *see* Compl., Doc. 1, ¶ 14, #3.

3

("APA") on March 5, 2019, under which Skyway was to take a used Citation aircraft in its possession, upgrade it with new GHAE engines, and then sell the now-modified aircraft to HRA. (*Id.* at ¶ 17, #4–5). As noted, this was to be a pilot program, after which Skyway would likewise be able to install GHAE jet engines on Citation aircraft owned by others. The companies contemplated that this would be a win for Skyway (who would be the only vendor authorized to provide the installation services for those other aircraft owners), and for GHAE (which would provide the new engines for modifying those aircraft).

In July 2019, GHAE also entered into a side agreement with Skyway allowing Skyway to take possession of an aircraft engine to use in its initial testing. (*See* GHAE Answer, Doc. 6, ¶ 50, #32; *see also* Skyway Answer, Doc. 12, ¶ 50, #121). That agreement provided that GHAE would retain ownership of the aircraft engine, which Skyway would return to GHAE by December 6, 2019. (GHAE Answer, Doc. 6, ¶ 49, #32; Skyway Answer to Counterclaim, Doc. 12, ¶ 49, #121). Skyway, however, did not voluntarily return the engine. Instead, in the course of this litigation, GHAE filed a Motion for Possession of Property (Doc. 7) on March 22, 2021, seeking return of its engine. The Court granted that Motion on June 4, 2021. (Doc. 19).

On or about March 4, 2020, GHAE informed Skyway that it would no longer provide funding to the joint venture. (Compl., Doc. 1, ¶ 33, #6). In response, Skyway informed HRA that GHAE had effectively terminated the CitationJet Program. (*Id.* at ¶ 34, #6–7). The parties exchanged settlement proposals and attempted to resolve their dispute without engaging in litigation, but HRA wound up suing Skyway in the

4

Union County Court of Common Pleas. (*Id.* at ¶ 35, #7). After that, Skyway filed this diversity action against GHAE on January 21, 2021, seeking to hold GHAE liable under promissory estoppel and indemnification theories. In its Answer (Doc. 6), GHAE asserted counterclaims based on Skyway's conduct in retaining GHAE's aircraft engine, and also sought to hold Skyway rather than GHAE liable for the end of the CitationJet Program.

GHAE filed its Motion for Judgment on the Pleadings (Doc. 16) on May 4, 2021. GHAE argues that Skyway's promissory estoppel claim should be dismissed because Skyway's reliance on any promises by GHAE was disavowed by the express provisions of the MOU and therefore unreasonable as a matter of law. (Mot. for J. on the Pleadings ("Mot."), Doc. 16, #149–158). GHAE also argues that Skyway's indemnification claim fails because GHAE has no duty to fulfill Skyway's obligations to HRA under the APA. (*Id.* at #159). Skyway responded in opposition on June 8, 2021. (Doc. 20). GHAE replied in support of its Motion on June 22, 2021. (Doc. 21). The matter is now fully briefed and ready for the Court's review.

## LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed in much the same manner as a motion to dismiss under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). This means the court construes the non-moving party's pleadings in the light most favorable to it, accepts as true the allegations contained therein, and draws all reasonable inferences in the non-moving party's favor. *See Bullington v. Bedford*

5

*Cnty.*, 905 F.3d 467, 469 (6th Cir. 2018). The court should grant the motion only if, having done all this, the court nevertheless finds that there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014). Accordingly, when the moving party is a defendant, a plaintiff need only provide the same "short and plain statement of the claim showing that the pleader is entitled to relief" that would suffice to survive a motion to dismiss under Rule 12(b)(6). *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

But that short and plain statement must offer more than mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This means a complaint must contain "either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quotation omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). In sum, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Rauch v. Day & Night Mfg.*

*Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.*

## LAW AND ANALYSIS

At bottom, this case is about the ability of sophisticated corporate entities, in the course of negotiating a complex business transaction, to protect themselves from pre-contractual liability by expressly addressing that issue up front. The gist of Skyway's promissory estoppel claim is that GHAE is liable to Skyway based on alleged promises that GHAE made to Skyway during the course of attempting to negotiate definitive agreements regarding a complex business transaction. The problem with Skyway's claims is that, before that negotiation process began, the parties expressly agreed, by way of a memorandum of understanding (MOU), that neither side would be bound until definitive contracts were reached. As a matter of law, then, that renders Skyway's reliance on any promises that GHAE may have made during those negotiations unreasonable, and thus defective as a basis for a promissory estoppel claim.

Much the same reasoning precludes the indemnification claims. Common law indemnification arises where two or more parties share responsibility for an obligation to a third party. Here, though, to the extent that Skyway made any binding obligations to HRA, before coming to final terms with GHAE on the role that GHAE would play in assisting Skyway in meeting those obligations, the express provisions of the MOU make clear that GHAE did not share Skyway's obligations to HRA. Thus, indemnification will not lie.

### A. Any Reliance On GHAE's Promises Was Expressly Disavowed By The MOU And Therefore Unreasonable As A Matter Of Law.

GHAE argues that the MOU precludes Skyway's promissory estoppel claim here because promissory estoppel is unavailable where a written agreement covers the same subject matter, and that any reliance on GHAE's alleged promises by Skyway was unreasonable as a matter of law given the express provisions of the MOU. (Mot., Doc. 16, #151). The Court agrees.

In Ohio, a claim of promissory estoppel requires the following four elements: "(1) a clear and unambiguous promise, (2) reliance by the party to whom the promise was made, (3) the reliance is reasonable and foreseeable, and (4) the party relying on the promise must have been injured by the reliance." *Moore v. Impact Cmty. Action*, No. 12AP-1030, 2013 WL 3873976, at *5 (Ohio Ct. App. July 23, 2013). Where a written agreement exists, promissory estoppel is not a vehicle for enforcing alleged oral agreements that contradict the terms of the written agreement. *Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 662 N.E.2d 1074, 1080 (Ohio 1996) ("an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms") (quoting *Marion Prods. Credit Ass'n v. Cochran*, 533 N.E.2d 325, 327 (Ohio 1988)).

Under these principles, Skyway's promissory estoppel claim fails as a matter of law. The MOU "pertains to exactly the same subject matter" as the alleged extrinsic promises Skyway seeks to enforce, namely GHAE's funding for the CitationJet Program. *See Ed Schory & Sons*, 662 N.E.2d at 1080. But the MOU also expressly provided that the understandings therein were "preliminary," that the obligations it

8

contemplated would not attach until the parties reached final agreements, and that the substantive provisions of the MOU itself were not binding. (MOU, Answer Ex. A, Doc. 6-1, #46). No party disputes that a final agreement as to GHAE's funding obligations was never reached. Thus, enforcement of any alleged funding promises by GHAE to Skyway independent of the MOU would impermissibly contradict the express terms of the MOU, which provided that the parties would not be bound to the transactions the MOU contemplated unless and until the parties reached a final agreement. Put another way, the fact that the MOU expressly disavowed enforcement of any obligations in connection with the CitationJet Program until final contractual terms were reached made Skyway's reliance on statements that GHAE purportedly made to Skyway during the negotiation process unreasonable as a matter of law. Therefore, such statements cannot serve as the basis for a promissory estoppel claim.

In reaching this conclusion, the Court is guided by analogous case law in which a plaintiff sought to invoke a promissory estoppel theory despite the existence of a writing indicating the parties' intent not to be bound before reaching a final contract. For example, in *Mansfield Square, Ltd. v. Big Lots, Inc.*, No. 08AP-387, 2008 WL 5159930, at ¶ 4, *1 (Ohio Ct. App. Dec. 9, 2008), the parties had exchanged letters of intent negotiating the terms of a potential lease agreement, and the defendant's sole letter of intent expressly stated that "[n]o commitment by [defendant] shall be considered binding until all of the terms are reduced to a written lease …." The Ohio court found that, under such circumstances, any reliance by the plaintiff on promises by the defendant to enter into the lease agreement was unreasonable as a matter of

9

law. *Id.* at ¶ 20, *5. Similarly, in *Heinz & Associates, Inc. v. Diamond Cellar Holdings, LLC,* No. 11AP-688, 2012 WL 1079087, at ¶ 41, *10, the parties exchanged emails and commercial lease drafts in an effort to negotiate a final lease, which never materialized. Again, the court deemed the plaintiff's reliance on promises made prior to the execution of that final agreement unreasonable as a matter of law, as the defendant had expressly stated that it did not intend to be bound until a final agreement could be approved by its attorneys. *Id.* at ¶ 43, *10. So here, Skyway could not reasonably rely on any promises that GHAE may have made, as the MOU expressly indicated that GHAE would not be bound to terms for funding the CitationJet Program until the negotiation of a final, written agreement.

Skyway argues that the MOU only precludes enforcement of the promises contained in the MOU itself, but is "silent" as to the enforceability of any other promises the parties might have made to one another. (Resp. in Opp'n to Mot. for J. on the Pleadings ("Opp'n"), Doc. 20, #191). That argument mischaracterizes the MOU. As the above discussion makes clear, the MOU does *not* say only that no party may enforce the promises that the MOU itself contains, leaving Skyway free to pursue claims based on other promises allegedly made separately. Instead, the MOU explicitly states that "[n]either Party … will be obligated to proceed *with the Transactions contemplated herein* unless and until the execution and delivery of the Agreements …." (MOU, Answer Ex. A, Doc. 6-1, #46) (emphasis added). No one disputes that such execution and delivery did not occur with respect to the GHAE funding for the CitationJet Program at issue. (If it had, Skyway would be bringing a

breach of contract claim.) Moreover, no one disputes that funding for the CitationJet Program is among the "Transactions" contemplated by the MOU. (*See* Compl., Doc. 1, ¶ 15, #3). Thus, the MOU expressly disavows any obligation by GHAE to provide the funding at issue here (which was included in the contemplated "Transactions") prior to the execution of a final written contract. That makes Skyway's reliance on alleged pre-contractual promises by GHAE unreasonable as a matter of law, and accordingly defeats Skyway's promissory estoppel claim.

Without seriously disputing the factual or legal basis for the above conclusions, Skyway separately suggests that GHAE's present position about the enforceability of promises made apart from the MOU is somehow inconsistent with the position GHAE took in its Motion for Possession (Doc. 7) of its aircraft engine, which the Court granted on June 4, 2021 (Doc. 19). More specifically, Skyway argues that GHAE's present position is inconsistent with its previous one because GHAE previously "[r]el[ied] on the terms of a post-MOU email exchange" in seeking return of the aircraft engine at issue. (Opp'n, Doc. 20, #192).

But Skyway's characterization of the right vindicated by GHAE's earlier Motion for Possession (Doc. 7) is incorrect. GHAE's Motion was not based only, or even primarily, on some promise Skyway made to GHAE in a post-MOU email exchange. Instead, GHAE sought to vindicate its *property interest* in the aircraft engine at issue, which Skyway did not contest. (*See* Order Granting Mot. for Possession of Property, Doc. 19, #183). Importantly, that property interest preexisted and did not depend upon the post-MOU emails that established the terms under

11

which GHAE would lend Skyway its aircraft engine. (*See id.* at #176). The Court has accordingly already addressed and rejected Skyway's argument that return of GHAE's aircraft engine would somehow be inconsistent with holding that the MOU bars enforcement of any alleged promises of GHAE funding for the CitationJet Program. (*See id.* at #183) ("The Court is not 'enforcing' Skyway's 'promise' to return the jet engine; rather, it is vindicating GHAE's ownership interest in its jet engine.").

Moreover, as GHAE notes, Skyway appears to admit that there was a final agreement concerning bailment of GHAE's engine. (*See* Reply in Supp. of Mot. for J. on the Pleadings ("Reply"), Doc. 21, #205 (citing Skyway Answer to Counterclaim, Doc. 12, ¶¶ 49–51, #32)). But there was no such agreement about GHAE's funding obligations for the CitationJet Program. Thus, even if the Court had been enforcing a post-MOU promise, rather than vindicating a property interest as was in fact the case, there would be no inconsistency. That is because that post-MOU promise took the form of a final agreement, while the alleged promises here, i.e., GHAE's alleged promises to fund the CitationJet Program, did not. And, even if GHAE were in some way asserting inconsistent legal positions, which it is not, Skyway still does not specify how that inconsistency would necessarily supply any principled support for Skyway's argument against dismissal of its promissory estoppel claim against GHAE.

Finally, Skyway argues that the reasonableness of its reliance cannot be resolved on a motion for judgment on the pleadings, but is instead "a question for the factfinder." (Opp'n, Doc. 20, #194). But, as GHAE notes, courts can and do decide the reasonableness of reliance as a matter of law at the pleadings stage where the

12

material facts are not in dispute. (Reply, Doc. 21, #204 (citing *Franco Marine 1, LLC v. Great Lakes Towing Co.*, Case No. 1:17CV2506, 2018 WL 2985185, at *6 (N.D. Ohio June 14, 2018))). Here, where the unreasonableness of any reliance by Skyway is apparent on the face of the MOU, which is incorporated by reference into the Complaint, and where there is no material factual dispute as to the MOU's applicability, the Court can and does conclude at the pleadings stage that any reliance by Skyway on GHAE's alleged promises was unreasonable as a matter of law.

For these reasons, the Court **GRANTS** GHAE's Motion (Doc. 16) with respect to Skyway's promissory estoppel claim against GHAE and **DISMISSES** that claim **WITH PREJUDICE**.

**B.     GHAE Does Not Share Any Duty Skyway May Have to HRA.**

In addition to its promissory estoppel theory, Skyway also asserts a claim against GHAE for indemnification of Skyway's obligations to HRA under the Aircraft Purchase Agreement (APA). "Indemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987). In an implied indemnification claim, a plaintiff who is secondarily liable for damages to a third party "seeks complete reimbursement from the party primarily liable for damages he or she has incurred." *Wagner–Meinert, Inc. v. EDA Controls Corp.*, 444 F. Supp. 2d 800, 804 (N.D. Ohio 2006). Accordingly, implied indemnification is appropriate in situations in which two parties "owe a common duty" to a third party. *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*,

307 F. Supp. 3d 719, 728 (S.D. Ohio 2018). An implied indemnification plaintiff must show that "(1) they are only secondarily liable for the allegations made by a third party; (2) the defendant is primarily liable to the third party … ; and (3) the plaintiff was passively negligent and did not participate in the underlying conduct that gave rise to the allegations made by the third party." *Koyo Corp. of U.S.A. v. Comerica Bank*, No. 1:10 CV 2557, 2011 WL 4729952, at *3 (N.D. Ohio Oct. 7, 2011).

Here, GHAE does not owe anyone a duty to fund the CitationJet Program because the parties never reached a final agreement as to the terms of any such funding obligation, which the MOU requires as a prerequisite to any legally enforceable obligation. Skyway, and not GHAE, entered the APA with HRA. The MOU expressly required a "definitive agreement" before GHAE could be bound to engage in any of the "Transactions" contemplated by the MOU with respect to the CitationJet Program. (*See* MOU, Answer Ex. A, Doc. 6-1, #46). GHAE never entered such a definitive agreement with respect to funding the CitationJet Program. Accordingly, and much the same as for its promissory estoppel claim, Skyway's claim for indemnification is barred by the express terms of the MOU.

Again, in reaching this conclusion, the Court is guided by analogous case law in which a claim for indemnification failed for lack of a common duty or relationship that would make the defendant responsible for the third party's injury. In *Wagner-Meinert,* a refrigeration company had been held liable for breach of contract due to a fire to which it alleged a subcontractor's faulty ammonia detection system contributed. 444 F. Supp. 2d at 802. The company in turn sought to hold the

14

subcontractor liable on an indemnification theory, but the court found the contractual relationship between the two parties insufficient to support such a claim. *Id.* at 804. Instead, the court determined that the refrigeration company's damages were based on its own independent obligation to the insurance company rather than on vicarious liability for any breach by the subcontractor. *Id.* In *Koyo Corp.*, the plaintiff had made a mistaken payment of money to one defendant, which was in turn obligated to turn over the proceeds of that payment to the bank defendant pursuant to a forbearance agreement. 2011 WL 4729952, at *1. The first defendant cross-claimed for indemnification from the bank defendant, but failed to substantiate that there was any basis for liability by the bank to the plaintiff, warranting dismissal of the indemnification claim. *Id.* at *3. As in these cases, Skyway here fails to identify any basis for primary liability by GHAE to HRA to fund the CitationJet Program that would support Skyway's indemnification claims with respect to HRA. Instead, the MOU expressly disavows any such funding obligation prior to a final agreement.

Skyway attempts to soften the blow by focusing on language in some cases suggesting that it might be enough for two parties to share a "common purpose" or "common goal" affecting the injured party. (Opp'n, Doc. 20, #195 (quoting *CSX Transp.*, 307 F. Supp. at 728)). But again, GHAE had only undertaken a "common purpose" or "common goal" with Skyway to the extent provided for in the MOU, which expressly foreclosed pre-contractual liability by any party with respect to the CitationJet Program. Under the terms of the MOU, Skyway could and did enter the APA with HRA, but it could not count on GHAE to pick up the tab when Skyway was

unable to fulfill the obligations that it, and not GHAE, had assumed to HRA. Simply replacing the words "common duty" with "common purpose" or "common goal" thus does nothing to circumvent the fundamental obstacle to Skyway's indemnification claim. Moreover, as the case law discussed above makes clear, even the fact that two or more parties are cooperating in a contractual (or, as here, pre-contractual) arrangement is not in itself enough to entitle one to indemnification from the other if their obligations to a third party are independent of each other. *Wagner-Meinert*, 444 F. Supp. 2d at 804. As with its promissory estoppel claim, Skyway's indemnification claim fails because the MOU expressly forecloses pre-contractual liability. Put another way, indemnification is not "implied" where, as here, an applicable agreement specifically disavows the obligation whose putative breach gives rise to the indemnification claim.

Thus, the Court **GRANTS** GHAE's Motion (Doc. 16) with respect to Skyway's indemnification claim and **DISMISSES** that claim **WITH PREJUDICE**.

## CONCLUSION

Accordingly, the Court **GRANTS** GHAE's Motion for Judgment on the Pleadings (Doc. 16) and **DISMISSES WITH PREJUDICE** Skyway's claims against GHAE. GHAE's counterclaims against Skyway in its Answer (Doc. 6) remain pending.

**SO ORDERED.**

December 13, 2021
**DATE**

**DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE**

16